IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| NATALIA R. WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  5:22-cv-00017 |
| | ) | |
| MARY BALDWIN UNIVERSITY, | ) | By: Elizabeth K.  Dillon |
| | ) | United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Plaintiff Natalia Wallace filed this Title VII action against defendant Mary Baldwin University (MBU).  She claims MBU discriminated against her on the basis of sex when it chose not to issue her a contract to teach a summer course in 2021 and then retaliated against her for bringing the issue to the Equal Employment Opportunity Commission (EEOC) by again denying her a contract to teach that class in summer 2022.  (Compl., Dkt. No. 1.)

Before the court is MBU's motion to dismiss for failure to state a claim.  (Dkt. No. 5.)  The motion is fully briefed and is now ripe for resolution.  The court finds that a hearing is not necessary to resolve MBU's motion, which will be granted.  Count One will be dismissed *with* leave to amend, and Count Two will be dismissed *without* leave to amend.

I.  BACKGROUND

Wallace, a female, is a full-time employee with the American Shakespeare Center (ASC) in Staunton, Virginia.  (Compl. ¶ 11.)  MBU—a private university with its main campus in Staunton—has a partnership with ASC, through which students enrolled in MBU's Shakespeare

1

& Performance Program can take classes taught by adjunct professors who may also be employed by ASC.  (*Id.* ¶¶ 9–10.)  During the events underlying this action, Wallace was supervised at ASC by Sarah Enloe, who was also an adjunct professor at MBU.  (*Id.* ¶ 11.)

In April 2016, MBU hired Wallace as an adjunct professor to teach a summer course in the theatre department ("THEA 118")[1] beginning in June 2016 at the main campus in Staunton, through the University's partnership with ASC.  (*Id.* ¶ 12.)  During her employment as an adjunct professor, Wallace began a consensual romantic relationship with an unidentified male employee of MBU.[2]  (*Id.* ¶ 14.)  The complaint alleges that Wallace was not violating any MBU policy or directive, as MBU has no policy regarding romantic relationships between employees.[3]  (*Id.* ¶¶ 16, 24.)  But in February 2019, Paul Menzer, the Dean of MBU's College of Visual and Performing Arts and Wallace's direct supervisor at MBU, discovered this relationship between Wallace and the male employee and deemed it "inappropriate" and "unprofessional."[4]  (*Id.* ¶¶ 15–16).

Dean Menzer refused to renew Wallace's contract to teach THEA 118 in summer 2019,

---

[1] Though the course name or number is not provided in the complaint, an email attached to MBU's motion to dismiss from MBU's Paul Menzer (*see* Dkt. No. 6 Ex. A), indicates that the course Wallace taught was THEA 118.  As discussed below, the court will consider this email, in a limited capacity, in deciding the motion to dismiss.

[2] Wallace does not provide a specific or approximate date on which this relationship began.

[3] Wallace also alleges that "at all times, [she] met or exceeded the legitimate business expectations of MBU."  (Compl. ¶ 13.)  But "legal conclusions pleaded as factual allegations, unwarranted inferences, unreasonable conclusions, and naked assertions devoid of further factual enhancement are not entitled to the presumption of truth."  *Wikimedia Found. v. NSA*, 857 F.3d 193, 208 (4th Cir. 2017) (internal quotations omitted).  Thus, the court cannot simply presume that Wallace "met or exceeded" MBU's "legitimate business expectations" absent supporting factual matter.

[4] Though Wallace alleges Dean Menzer "deemed" her relationship inappropriate and unprofessional, she does not clarify when or if Dean Menzer explicitly said that to her (or to anyone else at MBU).

and she was not offered another contract.  (*Id.* ¶¶ 16, 18.)  Instead, Dean Menzer listed Enloe as the instructor for the summer 2019 offering of THEA 118.  (*Id.* ¶ 18.)  Although MBU initially refused to renew the contract of the male employee, it later offered him a new contract to teach a different course within the same program.  (*Id.* ¶ 17.)

Despite not being under formal contract, Wallace did continue to teach the THEA 118 course in summer 2019; however, MBU would pay Enloe for Wallace's work.  (*Id.* ¶ 19.)  With the permission of Enloe and the consent of Dean Menzer, Wallace would—for all intents and purposes—teach the class, MBU would pay Enloe (who, although listed as the instructor for THEA 118, was not actively teaching it), and Enloe would then pass on the money to Wallace with a personal check.  (*Id.* ¶¶ 19–20.)  But even though Wallace was doing all the instruction and work for this course, MBU still refused to give her an employment contract or otherwise acknowledge her work.  (*Id.* ¶ 21.)

In 2020, Enloe questioned MBU[5] about why Wallace was not receiving a contract renewal; MBU responded that she was denied employment due to a purported "policy violation" allegedly stemming from her prior relationship.  (*Id.* ¶ 22.)  As the complaint alleges, MBU has no policy with respect to romantic relationships between employees, and Wallace was a teacher in a consensual relationship with another teacher.  (*Id.* ¶¶ 23–24.)

Although the course Wallace taught was not offered during summer 2020 due to the COVID-19 pandemic, it was once again listed for summer 2021.  (*Id.* ¶ 25.)  On or about May

---

[5] The complaint does not say specifically who represented MBU in this exchange.

3

14, 2021, Dean Menzer informed Wallace that she again would not be receiving a teaching contract for summer 2021, saying would not be "appropriate" for the role.  (*Id*. ¶ 26.)  But MBU had full knowledge that Wallace was still teaching the class.  (*Id.* ¶ 27.)  The male employee with whom Wallace had a relationship remained under contract as a teacher with MBU until he left for other employment, having never been found in violation of MBU policy nor told his continued employment at MBU was "inappropriate."  (*Id.* ¶ 28.)

On December 13, 2021, Wallace filed a charge of discrimination with the EEOC, alleging sex discrimination.  (*Id.* ¶ 29; *see also* Wallace's Mem. Opp. Mot. Dismiss, Dkt. No. 11, at 3.)  At some unspecified time after that filing (but presumably before June 2022, when the summer course at MBU would begin), Dean Menzer informed Wallace via email that she would not receive a teaching contract for summer 2022, noting that the class she once taught was purportedly not being offered that summer.  (Compl. ¶ 30; MBU's Mem. Supp. Mot. Dismiss, Dkt. No. 6, Ex. A.)[6]  Wallace maintains, though, that the class was listed in materials published

---

[6] MBU attached to its brief a copy of this email, in which Dean Menzer stated that he "[was] not sure how [Wallace] came to understand that [she] will be teaching THEA 118 at MBU this summer" and noted that because Wallace had "declined MBU's offer of appointment to teach the course in summer 2021, ASC has not made any plans with MBU to offer the course this year."  (Dkt. No. 6. Ex. A.)  On a motion to dismiss, the court may consider documents that are explicitly incorporated into the complaint by reference.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).  And in limited circumstances, the court may also consider "a document submitted by the movant that was not attached by or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity."  *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citations omitted).  But before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached or incorporated it.  *See id.* at 167.  "The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant."  *Id.* at 168.  "Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff."  *Id.*  "Treating the contents of such a document as true simply because it was attached to or relied upon in the complaint . . . would be contrary to the concept of notice pleading and would enable parties to hide behind untested, self-serving assertions."  *Id.* (internal quotations and citation omitted).

Here, although Wallace did not attach the email to the complaint, she effectively incorporated its contents

by MBU.  (Compl. ¶ 30.)

On March 23, 2022, 101 days after filing with the EEOC, Wallace brought this suit alleging two causes of action: "Sex Discrimination Under Title VII" (Count One) and "Retaliation Under Title VII" (Count Two).  (Compl. 5.)  MBU now moves to dismiss (Dkt. No. 5) under Rule 12(b)(6), arguing that a portion of Count One is time-barred, that she has not yet filed an EEOC charge as to Count Two, and that even if Wallace had satisfied those requirements, her complaint does not allege sufficient facts to plausibly support any Title VII claim against MBU.  (Dkt. No. 6, at 1–2.)

## II.   ANALYSIS

### A.  Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain enough factual information to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A motion to dismiss tests the sufficiency of the complaint, and the court must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009).  However, pleadings which are conclusory "are not

---

by reference when she alleged that she received an email from a representative of MBU after she filed her EEOC charge informing her that she would not be receiving a contract in summer 2022 because the course was not then being offered.  (Compl. ¶ 30.)  The email is also integral to the complaint in that its message forms the basis for the alleged adverse employment action giving rise to Wallace's retaliation claim.  However, in the email Dean Menzer also states that Wallace had declined an offer of employment for summer 2021; this was not alleged in the complaint, nor was there necessarily a conflicting allegation.  In view of Wallace's likely purpose for referring to the contents of the email relative to the causes of action she asserts, the court will consider the attached email, but only assume the truth of its contents to the extent it confirms Dean Menzer as the sender and reflects Wallace's allegation that MBU did not hire her to teach in summer 2022 on the purported justification that the course she once taught was not being offered.  Outside of that, the court will not assume the truth of the remaining contents.

entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Fourth Circuit has made clear that the pleading standards established in *Twombly* and *Iqbal* apply to claims of discrimination. *See Woods v. City of Greensboro*, 855 F.3d 639, 647–48 (4th Cir. 2017) (citing *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 583–85 (4th Cir. 2015)). Although a plaintiff is "not required to 'plead facts establishing a prima facie case of discrimination to survive a motion to dismiss,'" she is "nonetheless 'required to allege facts to satisfy the elements of a cause of action created by [the relevant] statute in compliance with *Iqbal*." *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585) (alteration in original). Thus, the question at this stage of the proceedings would be whether the plaintiff "has offered sufficient factual allegations to support a plausible claim" under Title VII. *Id.*

**B.  Count One: Disparate Treatment/Failure to Hire[7]**

**1.  Wallace did not timely file a charge of discrimination with the EEOC as to any discriminatory conduct by MBU before February 16, 2021.**

To pursue a Title VII claim in federal court in Virginia, a plaintiff must first file a charge of discrimination with the EEOC within 300 days of the date on which the "alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e-5(e)(1); *Edelman v. Lynchburg Coll.*, 300 F.3d 400, 404 (4th Cir. 2002).[8] "[A]n employee must file a charge of discrimination within

---

[7] Although Wallace stylizes Count One as alleging "Sex Discrimination Under Title VII," in her opposition brief she clarified that "[t]he adverse employment action at the heart of this Complaint is the *failure to hire* [her] in 2021." (Dkt. No. 11, at 7) (emphasis added.). As such, and for other reasons discussed below, the court will also analyze Count One as a discriminatory failure-to-hire claim.

[8] Because the timeliness of the charge is akin to a statute of limitations and is not a jurisdictional issue, courts analyze motions pertaining to timely filing under Rule 12(b)(6), as opposed to Rule 12(b)(1). *See Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)). In making a Rule 12(b)(6) determination, "a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637

the appropriate limitations period as to each discrete act of discrimination that occurred."
*Williams v. Giant Food Inc*., 370 F.3d 423, 429 (4th Cir. 2004) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  "Such discrete acts of discrimination 'are not actionable if time-barred, even when they are related to acts alleged in timely filed charges.'"
*See id.* (quoting *Morgan*, 536 U.S. at 113).  For purposes of Title VII, termination is a discrete act, as is the failure to hire.  *See Morgan*, 536 U.S. at 110; *Williams*, 370 F.3d at 429.

"The EEOC charge defines the scope of the plaintiff's right to institute a civil suit."
*Bryant v. Bell Atl. Md., Inc*., 288 F.3d 124, 132 (4th Cir. 2002) (citation omitted).  A plaintiff generally may bring only civil actions that "can reasonably be expected to follow" from the administrative investigation of this charge.  *Id*. (quoting *Chisholm v. U.S. Postal Serv*., 665 F.2d 482, 491 (4th Cir. 1981)).  However, "[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."  *Morgan*, 536 U.S. at 113.  "Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim" provided that the claim itself is based solely upon actions taken within the limitation period.  *Id.*

Here, Wallace's complaint includes factual allegations dating back to 2016.  As to the disparate treatment/failure-to-hire claim, there are at least three events at issue: Dean Menzer's 2019 decision not to renew Wallace's teaching contract, Dean Menzer's 2021 decision not to renew her teaching contract, and Dean Menzer's 2022 email informing Wallace that she again

---

F.3d 435, 448 (4th Cir. 2011).

would not be receiving a contract.  The complaint does not specify which of those actions forms the basis for Wallace's disparate treatment/failure-to-hire claim (if not all of them).

MBU now argues that any cause of action based on its 2019 decision not to renew Wallace's contract is time-barred.  The court agrees.  Wallace filed her EEOC charge on December 13, 2021.  Applying a 300-day window, the charge is only timely as to actions MBU took between February 16 and December 13, 2021, meaning this complaint can only seek relief for actions taken during that span.  Because any allegedly discriminatory conduct prior to February 16, 2021, is not covered by Wallace's charge and thus cannot give rise to a timely Title VII claim, the claim is untimely to the extent it seeks relief for that conduct.

That said, Wallace is still permitted to include allegations of events preceding February 16, 2021, as background evidence when they relate to other timely claims.  As such, the court will still consider the factual allegations *before* February 16, 2021, but only as context for the actions MBU took *after* February 16, 2021.  *See Morgan*, 536 U.S. at 113.

### 2.  Wallace has not sufficiently alleged her right to sue.

In a footnote of its brief, MBU argues that Count One should be dismissed in its entirety because Wallace never alleged that the related charge of discrimination was ever dismissed by the EEOC, nor that she received a right-to-sue letter.  MBU specifically notes that Wallace "appears to strategically plead around this issue, and such tactic should be fatal to her claim." (Dkt. No. 6, at 5 n.3.)

Upon receiving a charge of discrimination, the EEOC must notify the employer and investigate the allegations.  42 U.S.C. § 2000e–5(b).  If the EEOC finds "reasonable cause" to

believe the charge is true, the EEOC must "endeavor to eliminate [the] alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id*.  If the EEOC cannot achieve a voluntary settlement, it may "bring a civil action" against the employer in court.  42 U.S.C. § 2000e–5(f)(1).  But if the EEOC dismisses the charge, or if within 180 days of the filing of the charge the EEOC has not filed a related civil action or entered into a conciliation agreement with the aggrieved party, Title VII directs the EEOC to notify the aggrieved party of her right to sue in court.  42 U.S.C. § 2000e–5(b), 5(f)(1).  That notice is commonly referred to as a "right-to-sue letter."  Generally, a plaintiff must wait until the EEOC has issued a right-to-sue letter before she can bring her Title VII case to court.  *See* 42 U.S.C. § 2000e-5(f)(1); *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 140 (4th Cir. 1995).

But, in certain circumstances, a plaintiff may bring a Title VII suit even when the EEOC has *not* issued a right-to-sue letter.  The Fourth Circuit has held that "it is entitlement to a 'right to sue' notice, rather than its actual issuance or receipt," that is required before one may file.  *See Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982).  The Fourth Circuit confirmed this principle in *Moore v. City of Charlotte*, *N.C.*, finding that "[e]ntitlement to the letter, without actual receipt of it, is sufficient" to bring a claim.  754 F.2d 1100, 1104 n.1 (4th Cir.1985) (holding that plaintiff was permitted to maintain Title VII suit even though the right-to-sue letter was issued by the wrong government entity).  "This sensible principle" established in *Perdue* and *Moore* "give[s] effect" to the teaching "that Title VII be generously construed to achieve its important goal of providing a remedy for [] discrimination in employment." *Veliaminov v. P.S. Bus. Parks*, 857 F. Supp. 2d 589, 593 (E.D. Va. 2012) (quotations and citation

9

omitted); *see also Davis*, 48 F.3d at 140 (noting that "receipt of, *or at least entitlement to*, a right to-sue letter" is a "prerequisite that must be alleged in a plaintiff's complaint" (emphasis added)).

Here, as to the allegations underlying Count One of the complaint, Wallace submits she filed her charge of discrimination on December 13, 2021, and that the EEOC received the charge on December 15, 2021.  Wallace filed this action on March 23, 2022, only 101 days after filing the EEOC charge.  Nowhere in the complaint does she allege that EEOC dismissed her charge, or that the EEOC has not filed a related civil action or entered into a conciliation agreement. Even when the 180-day period passed (on June 11, 2022) and MBU had already filed its motion to dismiss (in which it pointed out this deficiency), Wallace never sought to amend the complaint to add the right-to-sue letter or any allegations concerning her entitlement to such a letter).[9]

All told, the court finds that, as to Count One, Wallace had no right to sue at the time she filed this action because she had not then received a right-to-sue letter, nor was she entitled to one.  This conclusion alone warrants dismissal of Count One.  But, as the court discusses below, even if Wallace did have a right to sue, her substantive allegations as to Count One nevertheless fail to state a claim under Title VII.

### 3. Wallace has not sufficiently alleged that she was an employee of MBU in 2021 for purposes of Title VII.

MBU argues that Count One must fail because Title VII only protects employees, and Wallace does not adequately allege that she was an employee of MBU at any time within the

---

[9] Wallace's response brief to MBU's motion (Dkt. No. 11) was also filed over 200 days after her EEOC charge, yet she made no attempt to clarify the status of her EEOC case or whether she ever received a right-to-sue letter (despite having undertaken to embed a copy of her EEOC charge in the text of the brief in response to MBU's timely-filing argument).

limitations period.

Generally, "[a]n entity can be held liable in a Title VII action only if it is an 'employer' of the complainant." *Erbe v. Campbell*, No. GLR-20-3266, 2021 WL 1890610, at *4 (D. Md. May 11, 2021) (citing *Butler v. Drive Auto. Indus. of Am., Inc*., 793 F.3d 404, 408 (4th Cir. 2015)).  Title VII defines an "employer" as a "person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." *Butler*, 793 F.3d at 408 (quoting 42 U.S.C. § 2000e(b)).  In turn, an "employee" is "an individual employed by an employer." *Id*. (quoting 42 U.S.C. § 2000e(f)).  Disparate-treatment claims must be brought by employees against their employers. *See Mallory v. Booth Refrigeration Supply Co., Inc.*, 882 F.2d 908, 910 (4th Cir. 1989) (characterizing "[t]he framework of proof for disparate treatment claims" as asking "whether the *employer* intentionally discriminated against the *employee*" (emphasis added)).

However, Title VII also provides certain protections to *applicants* for employment.  For example, a failure-to-hire claim is distinguishable from other employment discrimination claims in that it necessarily applies in most circumstances to non-employees seeking employment, rather than current employees.  The relevant employment status inquiry in a failure-to-hire claim is the status of the position an applicant is seeking, rather than the current relationship between the applicant and the would-be employer. *See, e.g.*, *Maune v. Bankers Life & Cas. Co*., No. 4:10–CV–00074–BLW, 2012 WL 4758104, at *5 (D. Idaho Oct. 5, 2012) (finding that the Court's conclusion that plaintiff was an independent contractor, not an employee, did not

11

automatically bar her failure-to-hire claims); *Thomas v. Texaco, Inc.*, 998 F. Supp. 368, 370–71 (S.D.N.Y. 1998) (denying summary judgment due to factual dispute as to whether position for which defendant allegedly failed to hire plaintiff was an employment position protected by Title VII or a contractor position not so protected).  Further, "the anti-retaliation provision found in Title VII makes it unlawful for an employer to 'discriminate' against employees *or applicants* because they have opposed discrimination or 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing' under the Act."  *Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (emphasis added) (quoting 42 U.S.C. § 2000e-3(a)).

Here, Wallace need not have been an "employee" of MBU within the limitation period to bring a failure-to-hire or retaliation claim, but her complaint titles Count One not as a failure to hire, but as "Sex Discrimination Under Title VII."  Further, in response to this motion, Wallace has analyzed her claim under Count One as disparate treatment under Title VII, whereas MBU has characterized it as a failure-to-hire claim.  Wallace noted in her opposition brief that the adverse action "at the heart" of Count One is the "failure to hire" her in 2021 after MBU had previously terminated her contract.  (Dkt. No. 11, at 7.)  This begs the question whether Count One, properly framed, is a disparate-treatment claim (which must be brought by an employee of the employer) or a failure-to-hire claim (which can be brought by an applicant).  Because the complaint is at best equivocal on this question, the court will briefly consider whether Wallace sufficiently alleges her employment status vis-à-vis MBU as of May 14, 2021 (when Dean Menzer informed her she would not receive a contract for summer 2021 and that she would not be appropriate for the role).

12

To assess whether an individual is an employee or independent contractor, courts look at the following factors, none of which is determinative: (1) "the source of the instrumentalities and tools;" (2) "the location of the work;" (3) "the duration of the relationship between the parties;" (4) "whether the hiring party has the right to assign additional projects to the hired party;" (5) "the extent of the hired party's discretion over when and how long to work;" (6) "the method of payment;" (7) "the hired party's role in hiring and paying assistants;" (8) "whether the work is part of the regular business of the hiring party;" (9) "whether the hiring party is in business;" (10) "the provision of employee benefits;" and (11) "the tax treatment of the hired party." *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 313 (4th Cir. 2001) (citing *Cmty. For Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989)). Of these factors, the Fourth Circuit "has given particular weight to the financial relationship between the hired and hiring parties. *Proa v. NRT Mid Atlantic, Inc*., 618 F. Supp. 2d 447, 458 (D. Md. 2009) (citing *Farlow*, 259 F.3d at 314).

For most of these factors, Wallace's complaint contains very few, if any, probative allegations. It does not allege who was responsible for the "tools and instrumentalities" of the job, whether Wallace had any official contact with MBU regarding her work to indicate she was being supervised or was accountable to anyone, whether MBU had the right to assign additional projects/other work to Wallace, whether MBU hired or paid anyone to work with or for Wallace, whether Wallace was entitled to receive any benefits, or the nature of the "financial relationship" between Wallace and MBU, other than that Enloe who would then pay Wallace via personal check with the money she had received from MBU. Wallace does not allege any written

13

agreement existed.  The only other description Wallace provided was that she would physically teach the class in Staunton, with the consent of Enloe and Dean Menzer.

In sum, Wallace makes only surface-level allegations about her arrangement with MBU and Enloe in summer 2021.  Without more, the court cannot conclude that Wallace's allegations support any inference that MBU was her employer for the purposes of Title VII.  Thus, she cannot state a colorable disparate-treatment claim against MBU based on the current allegations. But because Wallace can still bring a failure-to-hire claim regardless of her employment status, the court will now consider whether her complaint supports a plausible inference of a discriminatory failure to hire.

### 4.  The complaint does not adequately state a claim for discriminatory failure to hire.

To state a claim under Title VII based on a failure to hire, a plaintiff must demonstrate that (1) she belonged to a protected class; (2) she applied for, and was qualified for, a job for which the employer was seeking applicants; (3) she was rejected despite her qualifications; and (4) after her rejection, the position remained open and the employer continued to seek similarly-qualified applicants or filled the position with an applicant outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *EEOC v. Sears Roebuck & Co*., 243 F.3d 846, 851 (4th Cir. 2001).

The parties do not dispute that Wallace is a female and thus is within a protected class. (Compl. ¶ 11.)  But Wallace has not offered sufficient factual allegations to plausibly support the other elements.  On the second element, nothing in Wallace's complaint creates a plausible inference that MBU had an open instructor position for the summer of 2021 to which she could

14

apply.  Although the complaint alleges that Dean Menzer told Wallace she would not receive a contract for summer 2021 and that she would be "inappropriate" for such a role (Compl. ¶ 26), it is unclear whether Wallace had affirmatively applied for or otherwise expressed interest in an open position (assuming one even existed).  On the third element, even accepting that Wallace was qualified for an instructor role at MBU (a reasonable assumption given her experience teaching THEA 118 at MBU for several consecutive summers), she still failed to demonstrate that MBU was then actively considering her for employment, such that Dean Menzer's email could reasonably be construed as a rejection of her candidacy for an open position for which she applied.  Lastly, on the fourth element, the complaint offers no allegations regarding whether the alleged position (again, assuming it existed) remained open or whether MBU continued to seek similarly qualified applicants or filled the position with a non-female applicant.  *See, e.g.*, *Mian v. Paukstis*, No. CV PX 17-1971, 2018 WL 259806, at *3 (D. Md. Jan. 2, 2018) (dismissing Title VII failure-to-hire claim where plaintiff alleged general interest in a position but did not apply when one opened and did not allege that the position remained open or was filled by someone with similar qualifications).

Because the allegations do not create a plausible inference that Wallace applied for a job which MBU was seeking applicants or that MBU continued to seek similarly qualified applicants after "rejecting" her, the failure-to-hire claim cannot survive MBU's motion to dismiss.

### C.  Count Two: Retaliation

#### 1.  Based on the complaint's allegations, Wallace was not required to file an additional EEOC charge as to her retaliation claim.

MBU argues that Count Two should also be dismissed as a matter of claim processing

15

because Wallace failed to exhaust her administrative remedies by failing to file another EEOC charge as to MBU's alleged retaliation for filing the first charge.[10]  But the Fourth Circuit has expressly held that this is not required:

> [H]aving once been retaliated against for filing an administrative charge, the plaintiff will naturally be gun shy about inviting further retaliation by filing a second charge complaining about the first retaliation . . . . [W]e [therefore] join the other circuits that have spoken to the question in adopting the rule that a separate administrative charge is not prerequisite to a suit complaining about retaliation for filing the first charge.

*Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992) (quoting *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989)).  Such a rule is "the inevitable corollary of [the Fourth Circuit's] 'generally accepted principle that the scope of a Title VII lawsuit may extend to any kind of discrimination like or related to allegations contained in the charge and growing out of such allegations during the pendency of the case before the Commission.'"  *Id.* (quoting *Hill v. W. Elec. Co.*, 672 F.2d 381, 390 n.6 (4th Cir. 1982) (internal quotations and citation omitted)).

Here, Wallace alleges in Count Two exactly what the *Nealon* rule sought to address: retaliation that relates back to the filing of a prior EEOC charge.  MBU argues that the *Nealon* rule does not apply here because the allegedly retaliatory email was not sent during the pendency

---

[10]  MBU characterizes these arguments as a failure to exhaust administrative remedies, which, in the Fourth Circuit, was historically considered a deprivation of the court's subject matter jurisdiction giving rise to dismissal under Rule 12(b)(1).  *See, e.g., Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009).  However, as the Supreme Court recently clarified, Title VII's charge-filing requirement is a procedural claim-processing rule, not a jurisdictional requirement involving the court's authority.  *See Fort Bend Cnty., Tex. v. Davis*, 139 S. Ct. 1843, 1849 (2019).  Thus, if the court were to agree with MBU's position on either issue, the proper resolution would instead be dismissal for failure to state a claim under Rule 12(b)(6).  *See, e.g.*, *Carter v. Montgomery Cnty., Md.*, No. TDC-18-2249, 2019 WL 3804765, at *2 (D. Md. Aug. 13, 2019) (construing 12(b)(1) motion for failure to exhaust administrative remedies as a 12(b)(6) motion in light of the Supreme Court's decision in *Fort Bend*).

16

of the charge, but the court cannot conclude—based on the allegations in the complaint (or lack thereof)—that the charge was no longer pending at the time of that email. Wallace does not allege the date of the communication from MBU, and although MBU states in its motion that it was sent on March 8, 2022, there is no date listed on the email itself and the court cannot simply assume the truth of MBU's representation as to the date. Further, no party has represented to the court the date on which the EEOC charge was supposedly dismissed. So, even if the court accepted MBU's proffer that Dean Menzer's email was sent on March 8, 2022, the court has no knowledge of whether the EEOC charge was still then pending. As such, the court finds that filing another charge of discrimination to cover that retaliation was not, as a matter of claim processing, a prerequisite to Wallace filing her retaliation suit.

    **2. The complaint does not adequately state a claim for retaliation under Title VII.**

Title VII prohibits an employer from retaliating against a worker for either participating in a Title VII proceeding or opposing an employer's discriminatory practices." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 255 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)). To establish the elements of a retaliation claim, a plaintiff must show: (1) that she engaged in protected activity, (2) that the employer took a materially adverse action against her, and (3) there is a causal connection between the protected activity and the adverse action. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61–68 (2006)). Regarding the requirement of a material adverse action, as the Supreme Court has explained, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination."
*Burlington*, 548 U.S. at 68 (internal quotations omitted).  Further, to establish the necessary
causation for a retaliation claim, "the employer must have taken the adverse employment action
because the plaintiff engaged in a protected activity."  *Dowe v. Total Action Against Poverty in
Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (emphasis in original).  At this stage, a
plaintiff does not have to show that "their protected activities were but-for causes of the adverse
action."  *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 335 (4th Cir. 2018).  However, she still
must make some showing of causation—for example, by showing that "(1) the employer either
understood or should have understood the employee to be engaged in protected activity and (2)
the employer took adverse action against the employee soon after becoming aware of such
activity."  *Id*. at 335–36.

    Wallace alleges that due to her December 2021 EEOC filing, MBU "refused to issue an
employment contract." (Compl. ¶ 41).  But based on the complaint's allegations, Dean Menzer's
email—which was sent at some time between the filing of the EEOC charge and the summer
2022 semester—did not constitute a materially adverse action.  Although the standard for an
adverse action in the retaliation context is less stringent than for other Title VII causes of action
(such as failure to hire), the allegations here fail even that standard.  Wallace has not made any
allegation to support an inference that Dean Menzer's email might have dissuaded a reasonable
worker from making or supporting a charge of discrimination.  Quite the contrary, at least
subjectively, MBU's decisions to not renew Wallace's contract for the summers of 2019 or 2021
did not dissuade her from then filing the EEOC charge in December 2021, and MBU did

18

substantially the same thing in 2022 as it had in the prior years.  Wallace has not put forth any
allegation to show that a reasonable similarly situated employee would have interpreted MBU's
conduct differently.

Wallace's retaliation claim also fails on causation.  The complaint does not make any
meaningful allegation that MBU's decision not to offer Wallace a teaching contract in 2022 had
any connection to Wallace's filing.  First, there is no allegation that Dean Menzer or MBU knew
of the EEOC charge at the time he sent the email.[11]   The complaint does not even allege "some
degree of temporary proximity to suggest a causal connection."  *Constantine v. Rectors &
Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005).  Rather, the email indicates
that Dean Menzer was responding to an earlier message from Wallace—a message which
Wallace neither mentions nor incorporates in her complaint.  (*See* Dkt. No. 6 Ex. A ("Dear
Lia, . . . Thank you for your note. I am not sure how you came to understand that you will be
teaching THEA 118 at MBU this summer.").)[12]  More to the point, what the complaint does
demonstrate is that MBU took the exact same action in the years before Wallace's EEOC charge
(declining to offer her a teaching contract in summer 2019 and 2021) as it did once it supposedly
learned of the EEOC charge (declining to offer her a teaching contract in summer 2022).  Where
an employer has repeatedly taken a particular action, the bare fact that the employer took that

---

[11] But it would not be entirely unfair, at least in the abstract, to assume MBU's knowledge of the charge
because the EEOC is statutorily required, upon receipt of a charge of discrimination, to notify the employer
involved.  *See* 42 U.S.C. § 2000e–5(b).

[12] Even if the court assumed the truth of MBU's representation that Dean Menzer's email was sent on
March 8, 2022 (which it does not), the timing itself does not create a plausible inference of causation.  Indeed, a
lapse of two-and-a-half months between the protected activity and an adverse action "is sufficiently long so as to
weaken significantly the inference of causation."  *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003).

same action after a former employee engages in protected conduct cannot support a plausible

inference that the latter action was retaliatory.

All in all, because Wallace has not sufficiently alleged that MBU took a materially

adverse action against her or that there was a causal connection between her filing of the EEOC

charge and MBU's decision not to re-hire her as a teacher for summer 2022, MBU's motion to

dismiss as to Count Two will be granted.

## D.  Dismissal With or Without Leave to Amend

In her response to MBU's motion to dismiss, Wallace requested that if the court found

her claims deficient, she be granted leave to amend her complaint.

Federal Rule of Civil Procedure 15 instructs courts to "freely give leave [to amend a

pleading] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court should only deny leave to

amend when the amendment (1) would be prejudicial to the opposing party, (2) there has been

bad faith on the part of the moving party, or (3) the amendment would be futile.  *Johnson v.

Oroweat Foods Co*., 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178,

182 (1962)).  An amendment is futile when it would be "clearly insufficient or frivolous on its

face."  *Johnson*, 785 F.2d at 510.  This review for futility "does not involve an evaluation of the

underlying merits of the case."  *Kolb v. ACRA Control, Ltd*., 21 F. Supp. 3d 515, 522 (D. Md.

2014).  To the contrary, "[u]nless a proposed amendment may clearly be seen to be futile

because of substantive or procedural considerations, . . . conjecture about the merits of the

litigation should not enter into the decision whether to allow amendment."  *Davis v. Piper

Aircraft Corp*., 615 F.2d 606, 613 (4th Cir. 1980).  Ultimately, whether to grant leave to amend

rests in the court's discretion. *Foman*, 371 U.S. at 182; *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006).

Count One will be dismissed with leave to amend. There are several notable deficiencies in Wallace's disparate treatment/failure-to-hire claim, but each could be cured by amendment with more detailed allegations, if the appropriate factual matter exists to support them. First, as to Wallace's right to sue, if Wallace could allege that she has received a right-to-sue letter or otherwise is entitled to one, Count One would no longer be dismissible as a matter of claim processing. As to the substance of her disparate treatment or failure-to-hire claims, although the complaint does not include sufficient detail from which the court could draw a plausible inference that Wallace is entitled to relief under either theory, there are several factual allegations presently in the complaint that, if further developed, would meaningfully affect the analysis. Thus, "substantive [] considerations" do not "clearly" indicate amendment of Count One would be futile, and the court will grant Wallace leave to amend. *See Davis*, 615 F.2d at 613.

However, as to Count Two, the allegations plainly do not demonstrate retaliatory causation—nor, unlike with Count One, is there an indication that there were surrounding details oddly absent from the complaint would materially change that conclusion. Because amendment would not cure the defect, Count Two will be dismissed without leave to amend.

### III.  CONCLUSION

For the foregoing reasons, the court will grant MBU's motion to dismiss for failure to state a claim in full. Count One will be dismissed with 21 days' leave to amend, and Count Two

will be dismissed without leave to amend.  The court will issue an appropriate order to this effect.

Entered: February 24, 2023.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge